Good morning. May it please the Court, Becky Walker-James for the Defendant and Appellant Tarl Brandon. I'd like to reserve approximately three minutes for rebuttal. Please watch the clock. I will, thank you. I'd like to address first the issue, this case raises really an extraordinary circumstance where transcripts that were not only not themselves admitted in evidence, but were of tape recordings that were not admitted into evidence or erroneously provided to the jury as if they were evidence in the case. And I'll start there. I'd also like to, assuming I have time, to address the other issues, including the sentencing issues. But on this issue, this is a structural error. It's a fundamental defect in the process of the trial. It goes right to the fairness of the process. The fundamental tenet of due process is that a conviction is to be based only on the evidence presented at trial. So, looking at the cases that recited Nushfar and Ibsen and Eslaminia, all of these were decided before the Supreme Court ruled in Nader that even not giving instruction on an element of an offense is not a structural error. And that lists the structural errors, this isn't one of them. And the Supreme Court in Nader suggests that we look at all of these sorts of errors not as structural, but for harmlessness. And so, is there any post-Nader case that would suggest that this sort of error is a structural error? I'm not aware off the top of my head, although I could certainly provide supplemental briefing if it came to it, of a case that's post-Nader. But I don't think that Nader changes the analysis. Because even Eslaminia says, well, we look at it for harmlessness, this isn't like Nushfar. I mean, I thought those cases were a little bit in tension, but luckily, Nader came along and made that, seemingly made that irrelevant. But even in Eslaminia, it says, well, if the evidence isn't that overwhelming, there are 14 tapes or whatever it was in Nushfar, then we just look at it for harmlessness. So, why wouldn't we follow Eslaminia in light of Nader? Well, I think that this case is much more similar to Nushfar. I mean, really factually indistinguishable from Nushfar, and I guess to finish answering the question. Well, there's only two, or it's the 14 or whatever it was in Nushfar. Well, I'm not sure the number can be what determines whether it's structural error. And I think that's sort of maybe the tension that you're identifying. But also, I think the problem with the government's argument on this point, structural error can't depend on how incriminating the evidence is or how much of it there is. I mean, it's, the question is, is it a structural defect in the process? And I don't think Nader changes that analysis. We're looking at, it's just, in that case. Well, they're saying impartial jury, impartial judge. I mean, things that are actually cause, infect the trial from beginning to end. Whereas here, there was, you know, two transcripts of arguable impact that went to the jury. Doesn't seem like it infects the fairness of the entire trial from beginning to end. So, it doesn't seem to fall into that category. Well, it is substantive evidence. Unlike in Islamania, where they did say, well, this was evidence that went only to credibility. It wasn't substantive evidence and wasn't of the defendant himself. And that's how they distinguished Nushfar. But those distinctions don't work here. I mean, we do have substantive evidence of guilt involving the defendant himself. Let's assume for the moment that we end up disagreeing with you and thinking that we're reviewing it for harmlessness. Why was this evidence prejudicial? You know, and I did read through or attempted to read through the transcripts. And one of them, I think the government argues that one of the transcripts is largely unintelligible. And it did appear that way to me as well. The other one, you could read. So, explain to me why or what's the best analysis as to why it was prejudicial here in context? Well, these tapes, these transcripts rather, were not cumulative of other evidence presented at trial. There were other tape recordings in this case. But I would point out that merely being similar to other evidence doesn't satisfy the harmless beyond a reasonable doubt standard. And if you look at Arizona versus Phil Monante, for example. Why don't you answer the question, what's the most prejudicial thing you can find in those transcripts? I think, at least that's a question I have. Maybe that was a prejudicial question. I apologize, Your Honor. And maybe you could just point us to what it is. Right. Well, one tape involves almost exclusively about the defendant advising this friend of his about a conversation he was, an interviewer, was expecting to have with the FBI. And there's nothing like that in the other evidence. But it doesn't, I mean, the language is fairly ambiguous. I mean, it's a friendly, jocose conversation. There's nothing read in the context of the other evidence that suggests that he was involved in criminal conduct. But if you just read it on its own, it's difficult to see. And that's why we're asking you to point us to something in the transcript. It's difficult to see why it provides evidence of criminal conduct not otherwise presented. Right. Well, I think. So he's talking about don't talk to the FBI. I mean, I tell that to my daughter all the time. Right. And I tell my clients that. But that's just the point, that this, you know, this conversation really indicated that Mr. Brandon had had, you know, some experience with this. He's giving certain advice. So point us to specific language, if you would. Well, I'm going to have to have it at my fingertips. But I do recall from the transcript that he says, you know, you don't talk to him. That's how that works, man. You know, you don't talk to them. You say you need a legal representative. And the reason that's so problematic in this case is that the defendant here didn't testify at trial. And so when he's saying, you know, that's how this works. This is how we beat the system, basically. You just, you know, don't talk. Tell him you need a lawyer. You know, it reflects on how the jury evaluated his decision not to testify. Do you think that's the most prejudicial part of the transcript? Probably the most, but not the only. And I think the other problematic parts of these transcripts is that they are from a completely different time period and with different participants than the other undercover recordings. So we had admitted recordings from 2007. One of the recordings was from 2005. The other one doesn't seem to have any data at all. But it certainly expands, you know, the scope of what the jury was considering, potentially corroborates and plays into the government's theory that, you know, this was a longstanding set of conspiracies. Mr. Brennan was involved for a long period of time. And that was absent without these recordings. These recordings also, the 2005 recording that mentioned having been called by the FBI. And that would seem to corroborate the improperly admitted evidence of Ms. Loretta Hill saying that Mr. Brennan had been under investigation before. And we proofed that issue. But that was highly prejudicial. And this recording, this transcript rather, potentially corroborated and added to the prejudicial effect of that testimony. So you're down to two and a half minutes. Did you want to save it or did you want to address additional points? The only thing I would say very quickly, in maybe 30 seconds, is on the sentencing issue, I would just like to point out that we did file a 28-day letter. Recent case, United States v. Brown, I think is very helpful in illustrating the points that sentencing calculations have to be based on evidence and not mere extrapolation. And there was a serious evidence, as we've laid out in the brief, as to the lost calculation and the other adjustments. So the government provided documentation in a sentencing memorandum. It had both their summary chart and then they had the underlying documentation. So they provided evidence. They explained the reasoning and the district court accepted it. What was wrong with that? Well, one thing that was seriously wrong with the evidence was that the records that they relied on for their lost calculations were undated tax assessor records, which they relied on to say this was the subsequent sale. But there's not enough information in those documents to establish that this was the relevant sale, when it occurred, was it the proximate cause. But we know it happened before sentencing, right? That's what the government argues, because it was presented as sentencing. But one of the issues, maybe, is there a break in the chain of proximate causation. And so if there's an unreasonable delay in selling the property, for example, that could break the chain of proximate cause. And we just don't have that information. And at least in one case, which I think we cited in the brief at ER 951 and 956, it's not even clear it was the same. It doesn't even appear to be the same foreclosing party that's the grantor on the tax record. So there seems to be some other intervening cause there. So without more information and without more evidence, it just wasn't possible to make that determination. And Brown, I think I've also pointed out, is relevant on the issue of the leader organizer. And there does have to be evidence that Mr. Brandon directed other people. And that's just lacking in this case, as well. We have about 30 seconds left. So I'll try to reserve a little bit of that. Good morning. May I please record Adam Blake from the United States. With respect to whether the extrinsic transcripts that the jury erroneously received, I think the court is correct. It's not structural error. There are many, many, many cases of juries receiving evidence improperly. It's unfortunate, but it happens in our system. Are there any post-Nader cases that say one way or the other, whether we treat it as structural or trial error? I mean, Eslaminia sort of distinguishes Nushfar somehow. And so what has happened since then and after Nader was decided? I'm not familiar with any playing it directly to this issue, Your Honor. But once again, after Nushfar, there are a lot of cases using trial error as the standard. And this case gives a good example of why. The district court, we, the government, promptly disclosed this problem when we found out the district court had a hearing. He went through the factors that are outlined in the cases that he made the determination. And he, you know, he determined based on everything that he had in front of him that it wasn't, that this was harmless error. And to broaden the scope of Nushfar to say that every time a jury erroneously receives a tape recording, we don't look at it at all. It just, it doesn't make sense to have to redo the whole trial when we can have the district court who's, and there are several cases we cited in our brief saying the district court is in the best position to evaluate what the effect of this evidence was. The district court did that in this case, and it did it correctly. So we would argue that harmless error is the, or trial error is the lens that the court should view this through, and that the district court made the proper determination. Mr. Pike, this is Judge Noonan. Are you familiar with the recent case of the United States against Brown, just decided on November 7th by the circuit? Yes. But, are you familiar with that? Yes. And does that affect the number of offenders whose losses should be included? Excuse me? Doesn't that have an effect on whose loss you should count in counting the victims? Doesn't the Brown case have an effect on that? Let's, one moment, Your Honor. With the number of victims? Yes. Your Honor, we pointed out in our briefing in the district court, and I pointed it out in my brief as well, that the counts of conviction only had seven victims, but the relevant conduct included other victims. And I mean, I think in this Brown case that the district court, I'm reading on page 11 of the slip opinion, the district court determined that 147 victims had at least some communication or contact with Mr. Eddings, and therefore should have been added to the victim total as well. In this case, we presented more specific evidence than just some contact. The example that I have in mind, just because it was pointed out in the reply brief, is a relevant conduct and a non-charged, or three non-charged transactions by somebody named Katina Woodward. She bought three houses, and the, you know, an issue in this case had been whether we were able to show that the relevant conduct was also criminal conduct. Counsel, are you reading that case? Brown? It strikes me that what the case was saying regarding increasing the number of victims was that if you didn't consider them in the loss calculation, then you couldn't consider them for the later calculation. And the question is, were they considered in the loss calculation? I believe they were, Your Honor. By whom? By the judge? Yes, Your Honor. There's some confusion about... And how can we tell that the judge did consider the victims aside from the ones that were in the house? There is some confusion about that in the record, Your Honor. If it was confused, should we turn it back to be unconfused? Why should we not remand to have that confusion cleared up? If the court, and I will admit that there is some confusion, because in the record, I'm recalling the district court did say, you know, can we reach the $2.5 million threshold with only considering the counts that are included in the indictment? Is that the portion of the record that Your Honor is addressing? And the government said yes. And we did say yes, and then it's not clear whether he, it's not clear to me whether the district court was specifically limiting that finding to the counts of conviction and excluding the relevant conduct. And if the court thinks that that's insufficiently clear, then yes, the court can remand it and ask for clarification on that point based on Brown. So the district court, I read that section, and it was responding in part to the defendant's thing, there's not enough without the relevant conduct. And the district court asked, is there enough without the relevant conduct? And the government said yes. The district court then went on and adopted the relevant or accepted the relevant conduct for purposes of the $1 million and the 10 victims, correct? Correct. But didn't specifically rule on whether, it just says between $2.5 and $7 million. So it didn't specifically rule on that. That is correct, Your Honor. I didn't see that the defendant raised that issue either to the district court or to us in their briefs. So what do we do about that? I don't think the court needs to address it unless the court has any other questions. Judge Noonan, any other questions? Oh, go ahead. Thank you. If I could just address very quickly the issue raised by Judge Noonan on the number of victims. I do think that Brown does raise a question about the validity of the number of victims. And in addition to the fact that there's just a lack of proof of criminality, even as to the Katina Woodward additional evidence that the government put in, there was just no evidence, it was bare documents. I mean, there's no explanation of Mr. Brandon's involvement in it. And in addition, when you look at this, and you have to say that the victims were those who suffered part of the actual loss, the problems with the actual loss calculations which we've identified do infect that calculation as well. And I would totally agree with the government that the record is very unclear on this point. It's unclear who these victims were as they've acknowledged with respect to the restitution. They could really only identify three lenders who they could say these are exactly what they lost. And while the analysis is different under the guidelines calculation, it's telling because we really can't identify who these lenders were, who suffered what portion of the loss, and whether it was approximately caused by the defendant's conduct. So I think under these circumstances, a remand would be appropriate. Thank you, Your Honors. Okay. The case of United States v. Brandon is submitted. And this hearing is adjourned.
judges: Noonan, Fernandez, Ikuta